UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINDA K. WELCH,

     Plaintiff,

v.

THE ISLAMIC REPUBLIC OF IRAN, et al.,

     Defendants.

Civ. Action No. 01-863 (CKK)(AK)

**MEMORANDUM OPINION**
(July 31, 2006)

This action arises from the September 20, 1984 terrorist attack on the United States

Embassy Annex in East Beirut, Lebanon.  Chief Warrant Officer Kenneth Welch, husband of

Linda K. Welch[1] and father of Brian and Christopher Welch (collectively "Plaintiffs"), was one of

the unfortunate victims killed in this attack.  Plaintiffs filed suit against the Islamic Republic of

Iran ("Iran"); the Iranian Ministry of Information and Security ("MOIS"); the Iranian Islamic

Revolutionary Guard Corps ("IRGC"); Hezbollah; the Ayatollah Ali Hoseini Khamenei; Ali

Akbar Hasnemi-Rafsanjani; Ali Akbar Mohtashemi; and John Does seeking compensatory

damages for wrongful death and solatium, as well as punitive damages.  *See* Compl. at 2.

Kenneth Welch's mother, Betty Welch, and two brothers, Gerard and Michael Welch

(collectively, "Intervenors"), sought to intervene in this matter.

Upon review of the [44] Order and [48] Report and Recommendation issued by

_____

[1] Linda Welch is acting as a plaintiff in this case in both her individual capacity and as the
Administrator of Kenneth Welch's estate.

Magistrate Judge Alan Kay, the Court finds that (1) Intervenors have established their right to be heard on their claims and to intervene in the instant case, (2) Plaintiffs and Intervenors may exercise the option of filing a joint second amended complaint, and shall effectuate service of either said joint second amended complaint or their individual amended complaints upon Defendants, and (3) the parties cannot recover punitive damages against the IRGC.  The Court's findings of fact and conclusions of law are set forth below.

## I.  FACTUAL BACKGROUND

Kenneth Welch, a U.S. citizen, grew up in Grand Rapids, Michigan, as the oldest of four brothers.  *See* Tr. at 122.[2]  After graduating from high school, he enlisted in the Army and served with distinction in Vietnam,  Belgium, Iran, Ireland, Cameroon and China.  Tr. at 88, 132.  Kenneth's last embassy assignment was in Beirut, Lebanon in 1984.  *Id.* at 94.

On September 20, 1984, a van approached the United States Embassy Annex in East Beirut.  *See* [42] Plaintiffs' Revised Proposed Findings of Facts and Law ("Pls.' Fact Findings") at 2.  After ignoring the commands of security personnel and swerving around concrete barriers, the van came under fire from security stationed inside the embassy compound.  *See* [52] Plaintiffs' Amended Complaint for Damages Pursuant to the Foreign Sovereign Immunities Act ("Pls' Am. Compl.") at 4.  Thereafter, upon hitting a parked car, the van stopped approximately thirty feet from the embassy building and exploded, collapsing the facade of the building and raining masonry and broken glass over a wide area in the residential district.  *Id.*  The vehicle contained an estimated 350 pounds of explosives and caused the deaths of twelve people, including Kenneth

_____

[2] References to the evidentiary hearing held before Magistrate Judge Kay are by "Tr." and page number.

Welch.  *Id.* at 5.

## II.  PROCEDURAL HISTORY

On April 19, 2001, pursuant to the Foreign Sovereign Immunities Act ("FSIA"), as

amended, 28 U.S.C. §§ 1602–1611 *et seq.*, Linda Welch filed suit for wrongful death and

solatium, in her personal capacity, as Administrator of the Estate of Kenneth Welch, and on behalf

of the decedent's beneficiaries.  Plaintiffs seek an award of both compensatory and punitive

damages, reasonable costs and expenses, attorneys' fees, and other appropriate relief.  *See* Compl.

¶¶ 30–47.  In accordance with 28 U.S.C. § 1608(a)(4) of FSIA, Plaintiffs then served Iran, the

MOIS, and the IRGC with notice of this lawsuit by sending copies of the summons, complaint,

and notice of suit along with a translation of each into Farsi (Iran's official language) to the

United States Secretary of State.  The Secretary of State's Office of Policy Review and

Interagency Liaison advised Plaintiffs that the Swiss government, which represents American

interests in Iran in the absence of diplomatic relations, effectuated process on September 24, 2001.

*See* Motion for Entry of Default [10] at 3 & Ex. A (Letter from Betancourt to Mayer-Whittington,

10/22/01).  Pursuant to 28 U.S.C. § 1608(c)(1), service through diplomatic channels under Section

1608(a)(4) is deemed to have been properly made as of the date of transmittal identified in the

diplomatic note.  *See dkt entry* [9].

After the sixty-day period, prescribed in 28 U.S.C. § 1608(d), for Defendants to respond

expired, Plaintiffs filed for an entry of default and sought an evidentiary hearing to establish their

claims against Defendants, pursuant to 28 U.S.C. § 1608(e).  *See* [48] Report and

Recommendation ("R&R") at 3.  Under the FSIA, a claimant must establish her claim or right to

relief "by evidence satisfactory to the Court."  28 U.S.C. § 1608(e); *see also Peterson v. Islamic*

*Republic of Iran*, 264 F. Supp. 2d 46, 48 (D.D.C. 2003).  "'In evaluating the plaintiffs' proof, the

court may "accept as true the plaintiffs' uncontroverted evidence."'" *Holland v. Islamic Republic*

*of Iran*, 2005 U.S. Dist. LEXIS 40254, at *5 (D.D.C. 2005) (quoting *Campuzano v. Islamic*

*Republic of Iran*, 281 F. Supp. 2d 258, 268 (D.D.C. 2003) (citations omitted).  The Court then

granted Plaintiffs' Motion for Entry of Default and ordered the Clerk's office to enter default

against the Defendants.  *See* Order [15] at 1.

The Court also referred the matter to Magistrate Judge Kay for an evidentiary hearing on

Plaintiffs' Motion.  *See id.* at 2.  Just prior to the hearing, Intervenors filed their Motion to

Intervene, on January 24, 2003.  The evidentiary hearing was held on January 28, 2003, at which

time Betty, Michael, and Gerard Welch were permitted to present evidence and testimony as

potential witnesses.  The Magistrate Judge instructed all parties that the Court would render a

final decision on whether Intervenors "would be entitled to be claimants" as part of the lawsuit.

*See* Tr. at 12 ("Ultimately Judge Kollar-Kotelly is going to have to make that decision.").

Initially, Magistrate Judge Kay issued an Order granting the unopposed Motion of Betty,

Gerard, and Michael Welch to be Heard On Their Claims For Solatium, or in the Alternative, to

Intervene ("Mot. to Intervene").  *See* [44] Order.  Magistrate Judge Kay found that solatium

claims and awards are allowed for non-party close relations of the decedent and that the

Intervenors claimed an "interest relating to the property or transaction which is the subject of the

action and the applicants are so situated that the disposition of the action may as a practical matter

impair or impede the applicant's ability to protect that interest, and the applicants' interest is not

adequately represented by the existing party."  *Id.* at 2 (citing Fed. R. Civ. P. 24(a)).

Thereafter, before the Magistrate Judge issued a report and recommendation on the

pleadings and evidence, the United States Court of Appeals for the District of Columbia decided *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C. Cir. 2004), which indicated that "neither *28 U.S.C. § 1605(a)(7)* nor the *Flatow Amendment*, nor the two considered in tandem," create a private right of action against foreign states. *Id*. at 1032 (emphasis in original). Upon request for briefing on the impact of *Cicippio-Puleo* on this case, Plaintiffs argued that their claims were based on conventional common law torts, provided sufficient notice to Defendants, and alternatively, asked for leave to amend their complaint to further specify common and statutory causes of action. *See* R&R at 8. Subsequently, the instant circuit issued another FSIA-related decision, holding that plaintiffs cannot merely "allude to the traditional torts . . . in their generic form;" instead, plaintiffs must "identify a particular cause of action arising out of a specific source of law." *Acree v. Republic of Iraq*, 370 F.3d 41, 58–59 (D.C. Cir. 2004).

As such, the Magistrate Judge then issued his Report and Recommendation, indicating that the Court should find that Plaintiffs' general claims against Iran, the MOIS, and the IRGC failed to state a cause of action for which relief could be granted. *See* R&R at 11. Therefore, the Magistrate recommended that the Court grant leave to allow Plaintiffs to amend and serve their amended complaint, pursuant to Federal Rule of Civil Procedure 15(b). *Id*. The Report and Recommendation also indicated that the District Court should ultimately decide whether Intervenors could participate in the litigation. *See* R&R at 4 ("The undersigned advised the parties that the Trial Court would ultimately decide whether the claims of Betty, Gerard, and Michael Welch would be considered as part of this lawsuit.") Finally, the Report and Recommendation concluded that both the MOIS and the IRGC were legally to be considered political subdivisions of Iran. *Id.* at 10.

In compliance with Local Civil Rule 72.3(b), Plaintiffs and Intervenors both filed Objection Memoranda to the Magistrate Judge's Report and Recommendation within 10 days of its receipt. *See* [50] Objections of Linda Welch, Brian Welch, and Christopher Welch to the Report and Recommendation of the Magistrate Judge and Motion for Leave to File Amended Complaint ("Pls.' Obj."); [53] Objections of Intervenors Betty, Gerard, and Michael Welch to the Report and Recommendations of the Magistrate Judge ("Intvs' Obj."). The Plaintiffs objected to (1) the inclusion of the Intervenors in the suit; (2) the recommendation to re-serve the amended complaint; and (3) the "cursory conclusion" that the IRGC constituted a political subdivision, rather than an agent or instrumentality of Iran, and therefore was not susceptible to an award of punitive damages. *See generally* Pls.' Obj. Plaintiffs also moved in their Objections to dismiss the case against MOIS based on the Report and Recommendation's conclusion "that defendant, [MOIS] is an official agency of the Iranian government and indistinguishable from defendant Islamic Republic of Iran," and to dismiss the case against all remaining defendants apart from Iran and the IRGC based on failure to serve. *See* Pls. Obj. at 2. The Intervenors argued (1) that the question of their right to bring a claim for solatium and/or their right to intervene was no longer at issue because the Magistrate Judge had issued an order recommending their inclusion in the suit; (2) that service of the amended complaint was unnecessary because it raised no new causes of action; (3) that the IRGC was an agent of Iran, and not a political subdivision; and (4) that causes of action for which relief could be granted against Defendants based upon the Flatow Amendment and Section 1606 of FSIA were viable. *See generally* Intvs' Obj.

Along with their Objections to the Report and Recommendation, Plaintiffs also filed an amended complaint of their claims, integrating the recommendations of Magistrate Judge Kay and

-6-

specifying with greater detail their causes of action.  *See* [52] Amended Complaint for Damages

Pursuant to the Foreign Sovereign Immunities Act.  Plaintiffs' Amended Complaint names only

Iran and the IRGC as Defendants.  Intervenors, after filing their Objections to the Magistrate

Judge's Report and Recommendation, also filed an amended complaint.  *See* [57] Amended

Complaint of Intervenors Betty, Gerard, and Michael Welch.  Intervenors' Amended Complaint

also appears to only name Iran and the IRGC as Defendants based on the case caption on page one

and the explanatory listing of the parties on pages two through four (despite a presumably

erroneous mention of MOIS in paragraph two).  Neither of the amended complaints has been

served in compliance with the FSIA.

### III. LEGAL STANDARD

Under the FSIA, "[n]o judgment by default shall be entered by a court of the United

States or of a State against a foreign state, a political subdivision thereof, or an agency or

instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by

evidence satisfactory to the court."  28 U.S.C. § 1608(e).  As such, the Court is "required to make

a further inquiry prior to entering any judgment against defendants."  *Peterson*, 264 F. Supp. 2d at

48.

Pursuant to the provisions of Local Civil Rule 72.3(a), a District Court Judge may refer a

matter to a Magistrate Judge to "conduct hearings, including evidentiary hearings, and submit to

the judge proposed findings of fact and recommendations" for disposition of certain motions.  *See*

LCvR 72.3(a).  Once a Magistrate Judge makes findings and issues a report and recommendation

relating to those findings, "[a]ny party may file written objections to the magistrate judge's

proposed findings and recommendations . . . within ten days after being served with a copy

thereof." LCvR 72.3(b); *see Herbin v. Dist. of Columbia*, No. Civ. A. 02–1185(RWR), 2006 WL 890673, at *6 (D.D.C. Apr. 4, 2006). These written objections must specifically identify the portions of the report to which objection is made, and must specify the basis for such objections. *Id.* A judge shall render a *de novo* determination as to those portions of the findings and recommendations to which objection is made and may accept, reject or modify the findings; such determination may be based solely on the record developed before the magistrate judge, or the judge may conduct a new hearing and receive further evidence and testimony. LCvR 72.3(c). Importantly, failure to file timely objections to the findings and recommendations set forth in the report and recommendation may waive a party's right of appeal from an order of the District Court adopting the magistrate judge's findings and recommendations. *See Thomas v. Arn*, 474 U.S. 140 (1985).

## IV. DISCUSSION

For the sake of organizational clarity, the Court shall begin its analysis by first discussing the issue of whether Kenneth Welch's mother and brothers may intervene in Plaintiffs' action. The Court shall then address the parties' objections to re-serving an amended complaint. Finally, the Court shall consider whether Defendant IRGC is an agent or political subdivision, and therefore, whether punitive damages may be awarded.

A.    *Right to Bring Solatium Claim and/or Right to Intervene*

The first matter in dispute is the Intervenors' right to have their claims for solatium heard, or in the alternative, their right to intervene in the case. In Plaintiffs' Complaint, Plaintiffs brought an action to recover compensatory damages for solatium resulting from the "extraordinary grief and mental anguish" inflicted upon decedent's beneficiaries. *See* Compl. at 12. Thereafter,

Plaintiffs and Intervenors filed pleadings showing that a great deal of confusion existed at the time the Complaint was filed as to whether Betty, Gerard and Michael Welch were to be regarded as beneficiaries alongside Linda and the two sons.  *See* [21] Motion to Amend the Complaint and Permit the Joinder of New Parties (later withdrawn); [25] Mot. to Intervene (including attached Affidavit of Michael Engelberg, attorney-in-fact for Plaintiffs); Pls.' Fact Findings at 13–14.  In the aforementioned filings, as well as in the record from the evidentiary hearing held before the Magistrate Judge, *see* Tr. at 103, Plaintiff Linda Welch suggested that her attorney was meant to "represent [her] and the other members of the family," and confusion on the part of the attorneys resulted in the omission of Intervenors from the Complaint.  Nonetheless, subsequently, Plaintiffs withdrew their motion to join Intervenors, and opposed their participation in the suit in their [50] Objections to the Report and Recommendation of the Magistrate Judge, citing fear of possible delay in adjudicating the matter and the fact that decedent died intestate, such that, only she and decedent's sons are entitled to any portion of his estate.  *See dkt. entry* [23]; Pls.' Obj. at 12–13.

   The Magistrate Judge issued an Order on March 23, 2004, finding that Intervenors "have shown good cause why they should be heard on their claims for solatium in this litigation" and also granting "the alternative motion to intervene."  *See* [44] Order.  While the Court is aware of conflicting case law as to whether a magistrate judge may render an order on a motion to intervene,[3] the Court shall consider and adopt Magistrate Judge Kay's Order as a report and recommendation in light of the aforementioned statements that an ultimate decision on the issue

---

[3] *Cf. People Who Care v. Rockford Board of Education*, 171 F.3d 1083, 1089 (7th Cir. 1999) (finding that magistrate judge may decide motion to intervene with direct review by court of appeals), *with N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 996 F.2d 21, 25 (2nd Cir. 1993) (treating magistrate judge's decision on motion to intervene as report and recommendation to be reviewed by district court judge).

of intervention should be left to this Court.

The Court notes that upon review of the pleadings and the transcript of the evidentiary hearing, it is evident that Plaintiffs did not object to the inclusion of Intervenors until the filing of Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation.  The Court also notes that Plaintiffs indicated in the Complaint that Linda Welch "represents the interest of her husband's other beneficiaries."  *See* Compl. at 3.  Additionally, Plaintiff Linda Welch expressly stated that it was her intent for an attorney to represent all members of the family, including decedent's mother and two brothers, in this case.  *See* Tr. at 103.

Moreover, the Court is guided by other case law in this District showing that claims for solatium on behalf of close relatives of a decedent are generally heard, even if these relatives are not explicitly named as plaintiff.  *See* Mot. to Intervene at 4; *see also Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 268 (D.D.C. 2003) (awarding damages to decedent's family members for mental grief and anguish suffered even though only decedent's parents were named as plaintiffs); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260 (D.D.C. 2002) (damages for solatium are awarded to victim's immediate family, including parents and siblings, even if said victims are not named plaintiffs)*.  In *Stethem v. Islamic Republic of Iran*, Judge Jackson ruled that "to the extent that an award for loss of solatium is warranted," non-plaintiff siblings of a terror attack victim were entitled to damages for "bereavement and grief attendant upon their loss of [victim's] society and companionship."  *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 89 & n.18 (D.D.C. 2002)*.  Cf. Haim v. Islamic Republic of Iran*, 425 F. Supp. 2d 56, 75 (D.D.C. 2006) (Lamberth, J.).

Plaintiffs have also argued that because decedent died intestate, Intervenors would not

qualify for any portion of decedent's estate because distribution would go entirely to decedent's sons and surviving spouse.  *See* Pls.' Obj. at 13.  The Court finds this argument unpersuasive because Intervenors are not attempting to recover a portion of the estate.  Instead, Intervenors are seeking monetary damages for injuries that they personally suffered as a result of Defendants' actions, independently of the harm which befell the decedent's sons and spouse.  Therefore, they are not attempting to recover assets which should properly pass to decedent's immediate beneficiaries.  Plaintiffs have failed to support their position that Intervenors are attempting to recover a portion of decedent's estate, and therefore, the Court rejects this argument.

Additionally, Plaintiffs contend that the inclusion of new claims and parties three years after the case was initially filed might further delay the adjudication of Plaintiffs' claims.  *See id.* The Court is again not persuaded by this argument.  Since Intervenors already presented their facts and arguments at the evidentiary hearing, in line with the requirements of the FSIA for granting a default judgment, *see* 28 U.S.C. § 1608(e), any delay in adjudicating this matter upon the facts and law presented in the pleadings and at the hearing would be minimal.  As such, the Court will adopt this portion of Magistrate Judge Kay's Order and will grant Intervenors' motion to be heard on their claims.

With respect to Intervenors' alternative motion to intervene in the case, the Court finds that this motion may be granted either as of right or permissively; therefore, the Court shall adopt the Magistrate Judge's Order and allow the applicants to intervene.  Pursuant to Federal Rule of Civil Procedure 24(a), an applicant for intervention shall be permitted to intervene as of right if the applicant files a "timely application," and demonstrates that "the applicant claims an interest relating to the property or transaction which is the subject matter of the case," that the disposition

of the action may impair or impede the applicant's ability to protect that interest, and that the applicant's interest is inadequately represented by existing parties. *See* Fed. R. Civ. P. 24(a); *Acree*, 370 F.3d at 49; *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). An intervenor must also establish that it has proper standing under Article III of the Constitution, yet this element is satisfied because an applicant wishing to intervene on the side of a plaintiff has standing so long as one plaintiff has standing. *See Roeder*, 333 F.3d at 233 (citations omitted). In this case, Plaintiffs satisfy the standing requirements outlined by the Supreme Court in *Friends of the Earth, Inc. V. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000), by showing that they suffered an injury in fact from the death of decedent, that there was a causal connection between the death and the alleged actions of Defendants, and that the injury is capable of judicial redress through the award of damages. Additionally, the Circuit holds that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder*, 333 F.3d at 233 (citing *Sokaohon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000). Therefore, Intervenors have proper standing to intervene.

As regarding the Rule 24(a) requirements for intervention, the applicant Intervenors bring a solatium claim relating directly to the subject matter of Plaintiffs' case, thereby satisfying the first prong for intervention as of right. Furthermore, the Court finds that the disposition of Plaintiffs' action would impede Intervenors' ability to protect their interests. The Court is guided in this decision by the D.C. Circuit's ruling in *Natural Resources Defense Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977). With respect to a case brought against the Environmental Protection Agency under the Federal Water Pollution Control Act, the instant circuit held that the exclusion of several intervenor applicants would prevent those parties from participating in the initial and

crucial ruling on the matter. *Id.* at 909.  Additionally, the Circuit observed that subsequent

litigation brought by the excluded intervenor applicants would result in judicial inefficiency and

wasted resources. *Id.*  Analogously, in the instant case, exclusion of Intervenors would foreclose

their ability to protect their interest in the initial litigation regarding decedent and would compel

them to bring a separate action in which similar or identical issues of law and fact would need to

be re-litigated.  Finally, the Court agrees with the Magistrate Judge's conclusion that Intervenors'

interest is not adequately represented by existing parties based upon Plaintiff Linda Welch's

remark that she "wishes to present and preserve her original claim on behalf of herself and her

sons," and that Plaintiffs' attorney does not represent decedent's mother and brothers. *See* Pls.'

Obj. at 13.

    The timeliness of a motion to intervene is considered in light of "the purpose for which

intervention is sought, the need for intervention as a means of preserving the applicant's rights,

and the possibility of prejudice to the existing parties." *Acree*, 370 F.3d at 49–50 (citing *Smoke v.

Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (internal citation omitted)).  This determination is

reserved for the exercise of the court's sound discretion and reviewed on appeal only for abuse of

discretion. *See The Crow Tribe of Indians v. Norton*, No. Civ. A. 02--284 (RCL), 2006 WL

908048, at *2 (D.D.C. Apr. 7, 2006) (quoting *NAACP v. New York*, 413 U.S. 345, 366 (1973)).  In

the instant case, Intervenors filed their motion to intervene ten days after Plaintiffs withdrew their

motion to join them as parties. *See dkt. entries* [23] & [25].  Considering the valid interest of

Intervenors in being heard on their claim for solatium, their interest in participating in this first

litigation regarding the death of Kenneth Welch, and the lack of evident prejudice that would

result to the existing parties, the Court finds that Intervenors' motion was timely and may be

granted as of right.

Even assuming *arguendo* that some element of intervention as of right is not adequately met – namely, that disposition of Plaintiffs' action would not necessarily impair or impede applicants' ability to protect their interest – the Court alternatively shall grant the motion to intervene permissively.  Pursuant to Rule 24(b), the Court, enjoying considerable discretion, may permit a putative applicant to intervene if she presents: (1) an independent ground for subject matter jurisdiction; (2) a timely motion to intervene; and (3) a claim or defense that has a question of law or fact in common with the main action.  *See EEOC v. Nat'l Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

The FSIA establishes the general rule that foreign states, including their political subdivisions or agencies and instrumentalities, are immune from suit in the courts of the United States.  *See* 28 U.S.C. § 1604.  However, the FSIA also prescribes certain exceptions to this broad rule of immunity, including the recently enacted exclusion if a foreign state sponsors acts of terrorism.  *See* 28 U.S.C. § 1605(a)(7); *Holland*, 2005 U.S. Dist. LEXIS 40254, at *28.  Section 1605(a)(7) provides that a foreign state "shall not be immune from the jurisdiction of courts of the United States" in any case where

> money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605(a)(7).  This provision applies to a foreign state if: (1) the foreign state was designated as a state sponsor of terrorism at the time of the terrorist act or as a result of the act; (2)

the foreign state was afforded a reasonable opportunity to arbitrate the claim if the act occurred within the foreign state against which the claim has been brought; and (3) either the claimant or the victim was a national of the United States at the time of the terrorist act. *See id.*; *Holland*, 2005 U.S. Dist. LEXIS 40254, at *29.

In the instant case, Intervenors seek money damages for the death of Kenneth Welch and satisfy all of the elements needed for jurisdiction under the FSIA. First, Iran was designated as a state sponsor of terrorism under Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. app. 2405(j), and Section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371, in response to the 1983 bombings of the United States Embassy and Marine barracks in Beirut, Lebanon, which preceded the attack at issue in this matter. Second, the bombing occurred within the borders of Lebanon, not Iran, rendering the "opportunity to arbitrate" requirement irrelevant. *See* 28 U.S.C. § 1605(a)(7). Third, each of the possible Intervenors is a citizen of the United States, as was the victim, Kenneth Welch. Thus, the Court finds that Intervenors demonstrate an independent basis of subject matter jurisdiction against Defendants pursuant to the FSIA, and thereby satisfy the first prong for permissive intervention under Rule 24(b).

Intervenors also satisfy the second and third prongs for permissive intervention. As previously discussed, Intervenors filed a timely motion to intervene after withdrawal of Plaintiffs' motion to join Intervenors. Additionally, the issues of fact that Intervenors wish to litigate via their claims are identical, and many of the issues of law are either identical or otherwise overlap with those that Plaintiffs have brought in the case. Therefore, the Intervenors have also satisfied the elements for permissive intervention in the instant case. As a result, the Court shall grant the [25] Motion to Intervene.

B.    *Service of Amended Complaint*

Plaintiffs' and Intervenors' next objection to the Magistrate Judge's Report and

Recommendation concerns whether service must be effectuated for the amended complaints to be

filed.  Both Plaintiffs' and Intervenors' objection memoranda contend that the filed amended

complaints merely "reference specific state and common law causes of action," see Pls.' Obj. at

10, and "are in the nature of elaboration or clarification of legal theories, not addition of any new

cause of action," Intvs' Obj. at 6.  As such, the parties contend that service of the amended

complaints upon Defendants should not be required because they do not assert any new or

additional claims, but merely elaborate upon the original claims by providing additional bases of

liability within previously existing claims.  *See id.*

The FSIA outlines proper procedures for effectuating service on a foreign state and its

political subdivisions.  *See* 28 U.S.C. § 1608(a).  Under Section 1608(a)(4), the FSIA prescribes

that service may be made by:

> sending two copies of the summons and complaint and a notice of suit, together
> with a translation of each into the official language of the foreign state, by any
> form of mail requiring a signed receipt, to be addressed and dispatched by the
> clerk of the court to the Secretary of State in Washington, District of Columbia, to
> the attention of the Director of Special Consulare Services – and the Secretary
> shall transmit one copy of the papers through diplomatic channels to the foreign
> state and shall send to the clerk of the court a certified copy of the diplomatic note
> indicating when the papers were transmitted.

28 U.S.C. § 1608(a)(4).  The instant circuit has previously held that "strict adherence to the terms

of 1608(a) is required," see *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C.

Cir. 1994), and therefore, service of an amended complaint should be effectuated according to the

FSIA.  Service of an amended complaint has been previously effectuated through Section

-16-

1608(a)(4), *see Hill v. Republic of Iraq*, 175 F. Supp. 2d 36, 38 (D.D.C. 2001); *De Letelier v. The Republic of Chile*, 502 F. Supp. 259, 260 (D.D.C. 1980), and courts have indicated that service of an amended complaint should comply with Section 1608, *see Bybee v. Oper der Standt Bonn*, 899 F. Supp. 1217, 1222 (S.D.N.Y. 1995).  *See generally Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 117 n.13 (D.D.C. 2005).

Here, Plaintiffs and Intervenors, in their objections to the Magistrate Judge's report and recommendation, propose to supplement existing claims with other bases for liability:  Plaintiffs and Intervenors intend to supplement "a claim for solatium with a Claim for Intentional Infliction of Emotional Distress ('IIED')," see Pls.' Obj. at 6 & Intvs' Obj. at 5, and Intervenors intend to "include in the Amended Complaint" an "action under the Terror Victims Protection Act ('TVPA'), 28 U.S.C. § 1350 note, for wrongful death," see *id.* at 6.  Both Plaintiffs and Intervenors have filed, but not served, separate and disparate amended complaints reflecting these additions.

Moreover, Intervenors have also been granted the right to intervene and have their claims heard, thereby adding additional parties to the instant action of which Defendants were not properly apprised in Plaintiffs' initial complaint.  In light of said facts, the Court seeks to avoid wasting judicial and party resources by litigating based on two separate, but ultimately similar, complaints, and therefore suggests (without so ordering) that the parties file a joint second amended complaint to reflect the substantive claims of the parties, including Intervenors, that were brought before the Magistrate Judge at the evidentiary hearing.  If Plaintiffs and Intervenors decide to file a joint second amended complaint, the Court discourages the inclusion of new substantive matters in the joint second amended complaint, for such additions will require a new

evidentiary hearing to determine anew whether default judgment may be entered against Defendants.  *See* 28 U.S.C. § 1608(e).

The Court is aware of case law in the District suggesting that the service of an amended complaint pursuant to FSIA is not always necessary.  *See Dammarell v. Islamic Republic of Iran*, 370 F. Supp. 2d 218, 224-25 (D.D.C. 2005) (finding that service of an amended complaint was not required when a new complaint only clarified existing claims, Defendants had defaulted, and the burden of long delay in the proceedings would place a significant burden on parties); *Prevatt v. Islamic Republic of Iran*, 421 F. Supp. 2d 152 (D.D.C. 2006) (holding that service of an amended complaint was unnecessary when amended complaint removed designation of plaintiff as administrator of estate, deleted wrongful death count, and changed the solatium count).  Nonetheless, these decisions have acknowledged that additions to a complaint could be so substantial that the amended complaint must be served on a foreign state under section 1608 even though the foreign state is not being added to the complaint for the first time.  *Prevatt*, 421 F. Supp. 2d at 155 (citing *Dammarell*, 370 F. Supp. 2d at 225).  Out of an abundance of caution, the Court today holds that the inclusion of several new intervenor-plaintiffs, as well as the expansion of both the solatium and wrongful death claims to include IIED and TVPA allegations, requires that service of either both amended complaints or a joint second amended complaint must be effectuated to properly apprise Defendants of the charges pending against them, pursuant to 28 U.S.C. § 1608(a).  The Court also is not persuaded that a substantial burden will be placed upon the parties in terms of either delay or effort to effectuate proper service of either both amended complaints or a joint second amended complaint.  Therefore, the Court shall order the parties to effectuate service of either said joint second amended complaint or separate amended complaints

in compliance with 28 U.S.C. § 1608.

        C.       *The IRGC is a Political Subdivision rather than an Agent or Instrumentality*

        Plaintiffs and Intervenors next contend that Defendant IRGC is independent from the Iranian government and qualifies as an agent or instrumentality, rather than a political subdivision; therefore, the parties contend that the IRGC is separately liable for the bombing which killed Kenneth Welch, and an award of punitive damages may be entered against it.  *See* Pls.' Obj. at 11–12; Intvs' Obj. at 3–5.  The parties do not contest the Magistrate Judge's finding that Defendant MOIS is and should be considered part of the Iranian government.

        Having determined that an exception to the FSIA applies and Iran has no sovereign immunity as to this matter, *see supra* Section IV(A), "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state *except for an agency or instrumentality thereof* shall not be liable for punitive damages."  28 U.S.C. § 1606 (emphasis added).  Punitive damages are permitted only against "[a]n official, employee, or agent of a foreign state designated as a state sponsor of terrorism."  28 U.S.C. § 1605 note.  The D.C. Circuit has set down a categorical approach for determining if an entity should be considered the foreign state itself, or rather an agency, for the purposes of the FSIA:  "if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234–35 (D.C. Cir. 2003) (citing *Transaero*, 30 F.3d at 153).  In *Transaero*, the D.C. Circuit, applying this categorical test, concluded that "armed forces . . . in all cases" must "be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the state," under 28 U.S.C. § 1603.  30 F.3d at 153.

Two recent cases have dealt with the issue of the IRGC in the post-*Roeder* era.  In

*Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 116--17 (D.D.C. 2005), Judge John D.

Bates acknowledged that the IRGC did not easily fit into *Roeder*'s "dichotomy of government

entities with primarily governmental or commercial functions," but ultimately concluded that "in

its primarily military function and close association with MOIS, the IRGC is more like an 'armed

force'" under the command of the Iranian government leadership, "than like a commercial agency

or instrumentality of the state."  *Id*. at 116.  In *Holland*, this Court held that while it found it

difficult to "conceive of a situation where a plaintiff could ever gain punitive damages against an

FSIA defendant" under the *Roeder* framework, "even though Section 1606 clearly contemplates

such damages," 2005 U.S. Dist. LEXIS 40254, at *93 n.14, the Court nonetheless followed the

precedent set in *Roeder* in finding that plaintiffs could not obtain punitive damages against the

IRGC as an agent or instrumentality.  *Id*. at *92–93.

The case law iterates that the IRGC operates in a military capacity at the behest of Iranian

government leadership.  *See Salazar*, 370 F. Supp. 2d at 117.  After reviewing the core functions

of the IRGC, the evidence clearly suggests that the IRGC's purpose is more governmental than

commercial and its "primary function is paramilitary," thereby rendering it "a division of the state

of Iran" since a "'nation's armed forces are clearly on the governmental side.'"  *Prevatt*, 421 F.

Supp. 2d at 158, 161–62 (quoting *Roeder*, 333 F.2d at 234).  Therefore, this Court shall adopt the

Magistrate Judge's recommendation to treat the IRGC as a political subdivision of Iran, rather

than a separate agency or instrumentality.

D.     *Causes of Action Upon Which Relief May Be Granted in the Complaint*

The final objection to the Magistrate Judge's report and recommendation is raised by

-20-

Intervenors, contending that the complaint as presently filed "states a cause of action on which relief may be granted."  Intvs' Obj. at 7.  Intervenors, relying largely on Judge Jackson's decision in *Dodge v. Islamic Republic of Iran*, Civ. No. 03--252, 2004 U.S. Dist LEXIS 29045 (D.D.C. Aug. 25, 2004), argue that Flatow Amendment-based causes of action against foreign states remain viable through the operation of Section 1606, stating that "state sponsors of terrorism could be held liable in the same manner and to the same extent as private individuals who had committed the same acts of terrorism."  *See* Intvs' Obj. at 7.  The Flatow Amendment, passed in the wake of the changes implemented by Section 1605(a)(7), provides that:

> An *official, employee, or agent* of a foreign state designated as a state sponsor of terrorism . . . while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7) . . . for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7).

28 U.S.C. § 1605 note (emphasis added).  As such, Intervenors assert that they may recover against a foreign state based solely on the Flatow Amendment because as the Court in *Dodge* recognized, "[a] plaintiff . . . may sue that state under any cause of action arising from common law, foreign law, or federal statute which might ordinarily give rise only to individual liability." 2004 U.S. Dist. LEXIS 29045, at *12.  From its reading of the D.C. Circuit's decision in *Cicippio-Puleo*, the *Dodge* Court concluded that the Flatow Amendment and the TVPA provided a sufficient basis for plaintiff's recovery against the Republic of Iran.  *See Dodge*, 2004 U.S. Dist. LEXIS 29045, at *12.

　The Court has previously addressed this exact issue in *Holland*, 2005 U.S. Dist. LEXIS

40254, at *40, but will repeat its analysis here in brief.  Upon a review of *Cicippio-Puleo*, the

plain text of the relevant statutes, and their legislative histories, the Court joins several other

District Court decisions in concluding that the Flatow Amendment cannot be read to create a

private right of action against a foreign state through Section 1606.  *See Dammarell*, 370 F. Supp.

2d at 221–22; *Holland*, 2005 U.S. Dist. LEXIS 40254, at *40.

Three primary considerations weigh against expanding the cause-of-action created by the

Flatow Amendment to foreign states through Section 1606.  First, the plain text of the Flatow

Amendment limits its reach to actions against an "official, employee, or agent of a foreign state."

*See* 28 U.S.C. § 1605 note.  Considering traditional methods of statutory interpretation, a court

should be cautious in inferring significant expansion of an otherwise silent statute.  Second, the

legislative history of the Flatow Amendment does not indicate that "Congress intended to take the

more provocative step of creating a private right of action against foreign governments

themselves." *Cicippio-Puleo*, 353 F.3d at 1031.  "Given the proximity in time between the

enactment of the Flatow Amendment and section 1605(a)(7), one would expect some indication

that Congress expected the Flatow Amendment to apply to a foreign state, and the Court would

require as much before writing that result into a silent federal statute."  *Dammarell*, 370 F. Supp.

2d at 221–22.

Third, and finally, while *Cicippio-Puleo* does not completely foreclose the possibility that

a cause of action might exist under the Flatow Amendment other than of its own force or through

Section 1605(a)(7), the D.C. Circuit specifically emphasized that neither of those statutes, "nor

the two considered in tandem, creates a private right of action against a foreign government."

*Cicippio-Puleo*, 353 F.3d at 1032.  To circumvent the clear spirit of the Circuit's language and

allow a Flatow Amendment cause of action to proceed against a foreign state through Section

1606 would produce a result clearly in tension with the general direction of recent D.C. Circuit

caselaw.

Given this situation, the Court joins the *Dammarell* court in finding that "the cause of

action in the Flatow Amendment cannot be read to apply to foreign states through section 1606."

370 F. Supp. 2d at 221–22.  Therefore, the Court rejects Intervenors' argument that "even Flatow-

based causes of action remain viable" against foreign states.  *See* Intvs' Obj. at 7.  Therefore, the

Court will adopt the recommendation of the Magistrate Judge holding that where "Plaintiff's

complaint in this case is based on substantive theories arising directly under 28 U.S.C. §

1605(a)(7)," such claims do not state a cause of action for which relief may be granted.  *See* [49]

Addendum to R&R at 3.

## V. CONCLUSION

For the reasons set forth above, the Court adopts the [44] Order and [48] Report and

Recommendations of Magistrate Judge Kay, and orders Plaintiffs and Intervenors to effectuate

service of either both of their amended complaints or a joint second amended complaint upon

Defendants.  An Order accompanies this Memorandum Opinion.

Date:   July 31, 2006

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge